Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| Fernando Efraín Rodríguez Rodríguez **Apelado** V. María Antonia Meléndez Briganty **Apelante** | TA2025AP00571 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Civil. Núm. CG2021CV01219 Sobre: Daños y Otros |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

El 20 de noviembre de 2025, la Sra. María Antonieta Meléndez Briganty (señora Meléndez o apelante) compareció ante nos mediante *Apelación* y solicitó la revisión de una *Sentencia* que se emitió y notificó el 17 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Demanda* presentada por el Sr. Fernando Efraín Rodríguez Rodríguez (señor Rodríguez o apelado). En consecuencia, ordenó a la señora Meléndez a pagar la suma de $130,744.88 por concepto de rentas, $35,667.88 por concepto de intereses vencidos y la suma de $2,000.00 por concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

I.

El 21 de mayo de 2025, el señor Rodríguez presentó una *Demanda* sobre incumplimiento de contrato y daños en contra de la

señora Meléndez.[1] En síntesis, alegó que, el 24 de junio de 2016 las partes otorgaron un contrato de *Cesión De Rentas* producto de una antena sobre una propiedad sita en el barrio Beatriz del Municipio de Cayey, Puerto Rico. Sostuvo que dicho contrato contemplaba la cesión de rentas por concepto de arrendamiento del lote de la antena equivalente a un 50%. Además, arguyó que era tenedor de buena fe de un pagaré por la suma de $19,000.00 suscrito por la apelante, el cual estaba vencido, era líquido y exigible.

En respuesta, el 18 de agosto de 2021, la señora Meléndez presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[2] Como defensas afirmativas, esbozó que el contrato de *Cesión de Rentas* no se relacionaba con el *Contrato de Arrendamiento* vigente otorgado el 25 de octubre de 2016. A su vez, manifestó que no recibió los cánones pactados en el *Contrato de Arrendamiento*. Finalmente, indicó que por fe y creencia el apelado no era tenedor del pagaré en controversia.

Así las cosas, el 14 de febrero de 2022, las partes presentaron su *Informe Para el Manejo de Caso*.[3] Luego, el 20 de abril de 2022, el señor Rodríguez presentó una *Solicitud de Enmienda a Demanda* a los fines de incluir la causa de acción de incumplimiento de contrato doloso.[4] Explicó que, la apelante otorgó un nuevo contrato intitulado *Contrato de Arrendamiento*. Ello, a pesar de que el contrato previo proveía la prórroga automática por veinte (20) años. Sostuvo que advino en conocimiento de dicha información en la contestación al interrogatorio notificado por la señora Meléndez. El 5 de junio de 2022, el TPI autorizó la enmienda a la *Demanda*.[5]

---

[1] *Véase*, Entrada Núm. 1, SUMAC TA.
[2] *Véase*, Entrada Núm. 7, SUMAC TA.
[3] *Véase*, Entrada Núm. 21, SUMAC TA.
[4] *Véase*, Entrada Núm. 25, SUMAC TA.
[5] *Véase*, Entrada Núm. 26, SUMAC TA. El 31 de julio de 2023, el TPI emitió una *Sentencia Parcial* en la cual decretó el cierre y archivo sin perjuicio de la causa de acción en cobro de dinero por $19,000.00 basada en el pagaré firmado por la apelante. *Véase*, Entrada Núm. 33, SUMAC TA.

Culminado el descubrimiento de prueba, el 14 de enero de 2025, las partes presentaron el *Informe de Conferencia con Antelación a Juicio*.[6] Allí, estipularon los siguientes hechos:

1. Que la demandada adquirió la finca 9236 de Cayey mediante la escritura firmada el 24 de junio de 2016 numero 143 ante la notario Ednydia Negrón Colon, de Lime Properties LTD.

2. Previamente Lime Properties LTD había adquirido la propiedad de Firstabank quien adquirió la misma mediante venta judicial, escritura numero 28 otorgada en Guayama el 23 de mayo de 2013 ante la notario Dennisse M Dedos Ocasio.

3. Que al momento de la firma de la escritura de parte de Lime Properties LTD, la demandada adquirió la propiedad libre de cargas y gravámenes, información que surge igual en el contrato de cesión de rentas.

4. Que posteriormente la demandada cedió en donación la finca 9236 a su hijo mediante la escritura numero 9 otorgada el 14 de abril de 2021 a su hijo, Víctor Arnaldo Suarez.

Posteriormente, el 5 de febrero de 2025, el TPI celebró la *Conferencia con Antelación a Juicio*.[7] Celebrado el juicio en su fondo el 8 de septiembre de 2025, las partes estipularon los siguientes documentos:

Exhíbit 1: Contrato de cesión de rentas firmado el 24 de junio de 2016 entre el demandante y la demandada (3 folios).

Exhíbit 2: Folio Karibe de la finca número 9236 de Cayey en la que refleja las transacciones de la finca (8 folios).

Exhíbit 3: Pagaré $19,000 firmado por la demandada (2 folios).

Exhíbit 4: Contrato de Arrendamiento de fecha 25 de octubre de 2016 entre PR Site Development Corporation y la demandada (24 folios, entrada 73 SUMAC).

Celebrado el juicio en su fondo, luego de examinar los planteamientos presentados y escuchar a las partes, el 17 de septiembre de 2025, el TPI emitió y notificó su *Sentencia* declarando

---

[6] *Véase*, Entrada Núm. 64, SUMAC TA.
[7] *Véase*, Entrada Núm. 66, SUMAC TA.

Ha Lugar la *Demanda* presentada por el señor Rodríguez. En primer lugar, realizó las siguientes determinaciones de hechos:

1) El 24 de junio de 2016, las partes convinieron la cesión de la mitad de la renta por concepto de una antena de PR Site Development ubicada en una porción de terreno sobre la siguiente propiedad: ---RÚSTICA: Parcela número 1: predio de terreno localizado en el barrio Beatriz del término municipal de Cayey, Puerto Rico; con una cabida superficial 5 cuerdas equivalentes a una hectárea 96 áreas, 42 centiáreas, y en lindes por el Norte, carretera número 1, por el Sur con parcela número 13, por el Este con parcela número 2 y por el Oeste con Luce and Company.----------------------------- --------------------------------------------------------------- ---Inscrita al folio 191 del tomo 282 de Cayey finca 9236, Registro de la Propiedad de Caguas I.-------------- ---------------------------------------------------------------

2) El contrato provee para la cesión del 50% de las rentas producto de una antena.

3) La propiedad donde ubica la antena fue objeto de un proceso de ejecución de hipoteca. Surge del Registro de la Propiedad de Caguas, Sección Primera, que la misma fue adquirida por Lime Properties LTD de Firstbank que fue el banco que ejecutó la hipoteca que gravaba la propiedad. La parte demandada adquirió la propiedad de Lime Properties LTD el 14 de junio de 206, es decir, el mismo día que se firmó el contrato de Cesión de Rentas.

4) La propiedad al momento de la firma del contrato de cesión de rentas estaba libre de cargas y gravámenes por motivo de una orden de cancelación de gravámenes posteriores, que incluía la cancelación de la escritura de arrendamiento de una porción de la propiedad donde ubica la antena.

5) La parte demandante conocía sobre el contrato de arrendamiento de la atenta de telecomunicaciones y le informó a la parte demandada sobre la disponibilidad de dicho predio en el mercado.

6) El esposo de la parte demandada falleció el 28 de mayo de 2016.

7) La parte demandada no cualificaba sola para el préstamo de la propiedad, por lo que, los fondos para adquirir el inmueble donde situada la antena provinieron de una propiedad vendida, un dinero que le entrego su hijo y préstamo evidenciado por un pagare de $19,000.00. Las gestiones para adquirir el referido pagaré fueron efectuadas por la parte demandante.

8) El 25 de octubre de 2016 PR Site Development Corporation y la parte demandada firmaron un contrato intitulado Ground Lease Agreement, mediante el cual se arrienda el predio donde ubica la antena dentro de la

propiedad arriba descrita. El predio arrendado se identifica como Exhibit B del contrato.

9) El canon de arrendamiento por el predio sonde ubica la antena es de $2,100.00 mensuales el cual aumenta un 3% anualmente. El término del pago es a partir del 1 de agosto de 2016. Del contrato, también, surge que de 1 de agosto de 2016 al 31 de julio de 2018 PR Site Development Corporation efectuará un solo pago a la parte demandada por $51,156.00. A partir de 1 de agosto de 2018, PR Site Development Corporation comenzará con los cánones de arrendamiento mensuales.

10) La parte demandada reconoció no haberle pagado cantidad alguna a la parte demandante relacionado con la renta que ha percibido por concepto de la antena.

11) La parte demandante, a través de su representación legal, le envió una carta a la parte demandada el 14 de enero de 2020 solicitándole el 50% del cobro de las rentas relacionadas a la antena de telecomunicaciones y pago en torno al pagaré dirigido a Meléndez Briganty. La carta fue enviada a la siguiente dirección: Urbanización Jardines 2, H26 Calle Aleli Cayey Puerto Rico 00736. Surge del acuse de recibo que la carta fue recibida.

12) La dirección de la parte demandada se desprende del contrato Ground Lease Agreement y fue a la misma dirección a donde le fue dirigida la carta mencionada en el inciso anterior.

13) La parte demandada no respondió a la carta.

14) El hecho de que un contrato no conste inscrito en el Registro de la Propiedad no anula la validez del mismo.

En vista de las determinaciones de hechos antes formuladas,

ordenó a la apelante el pago de las siguientes cuantías:

1) $25,578.00 hasta el 31 de julio de 2018;
2) $13,367.34 de 1 de agosto de 2018 al 31 de julio de 2019;
3) $13,768.38 de 1 de agosto de 2019 al 31 de julio de 2020;
4) $14,181.42 de1 de agosto de 2020 al 31 de julio de 2021;
5) $14,606.88 de 1 de agosto de 2021 al 31 de julio de 2022;
6) $15,045.06 de 1 de agosto de 2022 al 31 de julio de 2023;
7) $15,496.44 de 1 de agosto de 2023 al 31 de julio de 2024;
8) $15,961.32 de 1 de agosto de 2024 al 31 de julio de 2025;
9) $2,740.04 de 1 de agosto de 2025 a septiembre 2025 para un total de $130,744.88;

Además, le impuso la suma de $2,000.00 por concepto de honorarios de abogado. De igual forma, aclaró que, a partir del 1 de octubre de 2025, hasta el saldo de la deuda de llegar a suscitarse en o antes de 31 de julio de 2026, el canon mensual era de $1,370.02. Asimismo, resaltó que, de no saldarse dicha deuda la misma continuaba acumulándose y la renta continuaba con un incremento del 3% anual de la renta del año previo a partir de todos los 1 de agosto de cada año. Adicionalmente, le impuso a la señora Meléndez el pago de 5.75% de interés anual de la cuantía del pago total por concepto de los daños contractuales sufridos desde el 14 de enero de 2020, fecha en que se le requirió el pago de lo adeudado. Entiéndase, $35,667.88 por concepto de intereses vencidos a razón de $20.88 diarios.

En esencia, el TPI determinó que la apelante nunca se comunicó con el señor Rodríguez respecto al cumplimiento del contrato de *Cesión de Rentas* suscrito entre ellos el 24 de junio de 2016. Ello, a pesar, de las gestiones de este último para que la apelante cumpliera con lo pactado. Así pues, determinó que la señora Meléndez incumplió con el contrato de cesión. De igual forma, destacó que la apelante tampoco le notificó al apelado un segundo contrato que suscribió con PR Site Development Corporation mediante el cual recibía una renta prepagada de $51,160.00, cantidad que incluía un 3% de aumento anual por la mencionada antena.

En desacuerdo, el 2 de octubre de 2025, la señora Meléndez presentó su *Moción de Reconsideración*.[8] Allí, reiteró sus planteamientos iniciales. Además, aclaró que, el *Contrato de Cesión* presuponía la existencia de un contrato de arrendamiento vigente. No obstante, indicó que el contrato de arrendamiento con PR Site se

---

[8] *Véase*, Entrada Núm. 81, SUMAC TA.

firmó después de la cesión y sobre una base legal distinta. Por tanto, razonó que la cesión nunca pudo tener eficacia respecto a rentas futuras que no estaban previstas ni reconocidas al momento de su firma.

Por su parte, el 21 de octubre de 2025, el señor Rodríguez presentó su *Oposición a Reconsideración*.[9] En síntesis, alegó que la figura de cesión de crédito no aplicaba al caso de epígrafe, puesto que el contrato mediante el cual la apelante se obligó a la cesión de rentas era producto de la antena que firmó relacionado a este.

El 21 de octubre de 2025, el TPI emitió una *Orden* declarando No Ha Lugar la *Moción de Reconsideración*.[10] Aún en desacuerdo, el 20 de noviembre de 2025, la señora Meléndez presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas al determinar que existía un contrato perfeccionado de cesión de rentas de PR Site Development LLC cedido por IWG LLC. Y entre las partes en este pleito.**
>
> **Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas al determinar que la extinción de la obligación de un contrato no anula su validez y exigencia de cumplimiento.**
>
> **Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas al establecer que existía un crédito válido a favor del comprador y aquí apelado proveniente de un segundo contrato de renta de espacio de una antena que se firmó entre partes diferentes y en una fecha posterior al contrato original de cesión de rentas.**

Atendido el recurso, el 3 de diciembre de 2025, emitimos una *Resolución* concediéndole a la parte apelada hasta el 8 de diciembre de 2025 para presentar su posición en cuanto al recurso. Oportunamente, el señor Rodríguez presentó su *Oposición a Escrito de Apelación*.

---

[9] *Véase*, Entrada Núm. 85, SUMAC TA.
[10] *Véase*, Entrada Núm. 86, SUMAC TA.

Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

II.

**-A-**

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992.[11] Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado; *pacta sunt servanda.* Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000).

En tal sentido, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

Cónsono con lo anterior, sabido es que, en el ámbito de las obligaciones y contratos, es una doctrina fundamental que cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de

---

[11] Resaltamos que el cuerpo legal vigente en el momento que las partes contrataron era el Código Civil del 1930.

interpretación. Art. 1233 del Código Civil, 31 LPRA ant. sec. 3471. Los términos de un contrato se reputan claros "cuando por sí mismos son bastantes lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias, ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009). Así pues, en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes. Íd., pág. 387.

Ahora bien, el Art. 1054 del Código Civil, 31 LPRA ant. sec. 3018, establece que "[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas". Luego el Tribunal procederá determinar el monto del resarcimiento de acuerdo con las disposiciones del Código Civil, Arts. 1055 al 1063, sobre los tipos de daños indemnizables, el alcance de la responsabilidad del deudor y la forma en que ha de resarcir el perjuicio causado, de acuerdo a la naturaleza de la obligación. J. R. Vélez Torres, *Derecho de Obligaciones,* 2da ed., San Juan, Programa de Educación Jurídica Continua, U.I.P.R., 1997, págs. 278 y 281. Dicho de otro modo, para imponer responsabilidad a quien incumple una obligación, primero es necesario identificar si el incumplimiento fue culposo o negligente; si fue doloso o intencional.

Lo anterior se debe a que el primer párrafo del Art. 1060 del Código Civil, 31 LPRA ant. sec. 3024, se aplica a los casos en los que el incumplimiento se deba a culpa o negligencia, dispone que "[l]os daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento." En consecuencia, si la obligación consistiere en el

pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal. Art. 1061, 31 LPRA ant. sec. 3025.

**-B-**

El Art. 1210 del Código Civil, 31 LPRA sec. ant. 3375, dispone que las partes contratantes tienen el deber recíproco de actuar con buena fe. La buena fe debe permear todo el proceso de contratación desde sus fases iniciales durante la negociación del contrato y durante la fase de su cumplimiento. *Ortiz Brunet v. El Mundo*, 169 DPR 332,340 (2006). Además, impone deberes especiales de conducta de acuerdo con la naturaleza de la relación jurídica y con la finalidad perseguida por las partes a través de ella. Íd. Particularmente, la buena fe les impone a las partes un deber de lealtad recíproca en las negociaciones en el tratar, el proceder honrado y leal. Íd.  Supone también el guardar la fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella; conducirse como cabe esperar de cuantos, con pensamiento honrado, intervienen en el tráfico como contratantes. Íd.

III.

En el presente caso, la señora Meléndez impugnó la *Sentencia* que se emitió y notificó el 17 de septiembre de 2025 por el TPI. Específicamente en su primer señalamiento de error, planteó que el TPI erró al determinar que existía un contrato perfeccionado de cesión de rentas de PR Site cedido por IWG, LLC y, entre las partes en este pleito. Por otra parte, en su segundo señalamiento de error, argumentó que el TPI incidió al determinar que la extinción de la obligación de un contrato no anulaba su validez y exigencia de cumplimiento. Finalmente, en su tercer señalamiento de error, sostuvo que el TPI erró al establecer que existía un crédito válido a favor del comprador y el apelado, proveniente de un segundo

contrato de renta de espacio de una antena que se firmó entre partes diferentes y en una fecha posterior al contrato original de cesión de rentas.

Por estar estrechamente relacionados entre sí, discutiremos los señalamientos de error en conjunto. En el caso de epígrafe, las partes suscribieron un contrato de *Cesión de Rentas* por concepto de una antena de telecomunicaciones localizada en el terreno adquirido por la apelante. Mediante el referido contrato, la señora Meléndez se comprometió al pago del 50% del canon de arrendamiento que percibiera de la antena localizada en su propiedad. No obstante, posterior a firmar el contrato de *Cesión de Rentas*, el 25 de octubre de 2016, la apelante suscribió un *Contrato de Arrendamiento* con PR Site, mediante el cual recibiría una renta por la suma de $2,100.00 mensuales por dicha antena.

Según el derecho que antecede, las obligaciones derivadas de un contrato tienen fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado; *pacta sunt servanda*. Art. 1044 del Código Civil, *supra*. Por tanto, una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil, *supra*. En tal sentido, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil, *supra*. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, *supra*. cónsono con lo anterior, cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, *supra*.

Según surge de los documentos ante nuestra consideración, el segundo contrato suscrito por la apelante con PR Site intitulado *Contrato de Arrendamiento* es un contrato distinto al contrato suscrito por las partes de epígrafe sobre *Cesión de Rentas*. Cabe precisar que, ambos contratos eran claros al establecer específicamente el asunto pactado entre las partes, por lo que no era necesario interpretar las cláusulas de estos. Asimismo, dicho contrato expresaba la vigencia de estos. Particularmente, mediante el contrato de *Cesión de Rentas* suscrito el 24 de junio de 2016, las partes convinieron la cesión de la mitad de la renta por concepto de una antena ubicada en una porción de terreno sobre la propiedad sita en Cayey, Puerto Rico. Mientras que, en el *Contrato de Arrendamiento* suscrito el 25 de octubre de 2016 entre la apelante y PR Site, esta arrendó el predio donde ubicaba la antena dentro de la propiedad. Por ello, no le asiste la razón a la apelante al argumentar que el *Contrato de Arrendamiento* anuló o invalidó el contrato de *Cesión de Rentas*, puesto que se convinieron o pactaron asuntos distintos.

Por otra parte, surge que, la apelante no realizó los pagos correspondientes al contrato de *Cesión de Rentas*. Ello, a pesar de las gestiones realizadas por el señor Rodríguez para lograr el pago según pactado. Además, nos parece meritorio aclarar que, dicho contrato estaba vigente, toda vez que no fue anulado por las partes ni por el Tribunal. Por tanto, la apelante estaba obligada al pago de los cánones pactados en el contrato de *Cesión de Rentas*.

Nótese, además, que una vez la apelante suscribió el *Contrato de Rentas* debió notificarle al apelado a los fines de aclarar lo que contenían cada uno de esos contratos. Por su parte, el apelado, una vez advino en conocimiento de que la apelante suscribió el *Contrato de Arrendamiento*, intentó comunicarse con esta para explicarle que dichos contratos eran distintos, por lo que esta tenía que realizar los

pagos correspondientes al *Contrato de Cesión*. Sin embargo, expresó que esta se negó a realizar los pagos según pactados. Por el contrario, es necesario señalar que la apelante no presentó prueba que demostrara que dichos contratos contenían las mismas cláusulas, por lo que el *Contrato de Arrendamiento* no anuló el contrato de *Cesión de Rentas*. Tampoco surge del expediente que la apelante realizó gestiones dirigidas a realizar los pagos correspondientes al apelado.

Reiteramos que, el Art. 1054 del Código Civil, *supra*, dispone que "[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas". En lo pertinente, en los casos en los que el incumplimiento se deba a culpa o negligencia, dispone que "[l]os daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento". Por tanto, es forzoso concluir que la apelante está obligada al pago de los daños por culpa o negligencia. Ello, pues incumplió con el contrato de *Cesión de Rentas*. Así pues, colegimos que los señalamientos de error no se cometieron.

Debemos recordar que, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia. *RAD-MAN San Juan III-D, LLC*, supra, pág. 338. Lo anterior, como norma general, prohíbe que un tribunal apelativo sustituya las determinaciones de hechos de un foro inferior. Íd. Por lo tanto, los foros revisores no debemos intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. Íd. Así pues, no

debemos de intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. Por tanto, evaluado el expediente ante nuestra consideración y el derecho aplicable, no encontramos que dicho foro haya errado en sus conclusiones de derecho.

IV.

Por los fundamentos expuestos, **confirmamos** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones